OPINION
Harold Moore, Jr. appeals from his conviction of assaulting a peace officer in violation of R.C. 2903.13. Moore was convicted after a bench trial in Montgomery County Common Pleas Court.
In the early morning hours of January 5, 1999, Moore was taken, by ambulance, to the emergency room of Good Samaritan Hospital in Dayton, for treatment of two stab wounds in the back. Moore had an odor of alcohol on his person when he arrived at the hospital. While in the emergency room, Moore was loud and belligerent toward the hospital staff members. Officer Rodney Moody, employed as a security officer at the hospital for twenty-three years, characterized Moore's behavior as "swearing, cussing, screaming, obnoxious, and disrupt[ive] of the normal flow of the emergency room . . ." T. 10). Moore became so abusive toward the hospital staff that the emergency room physician, Dr. Rebecca Perry, asked the hospital security officers, Moody, David Cann, and Chris Grimes, to place restraints on Moore's wrists and ankles. (T. 23).
After Moore convinced the charge nurse that he would calm down, the wrist restraints were removed. Shortly after the restraints were removed, Moore was observed trying to also take off the ankle restraints. (T. 24). In response to Moore's actions, the nurse asked the officers to again place Moore in wrist restraints. At approximately 6:20 a.m., Moody, Cann, and Grimes approached Moore to put the wrist restraints back in place. Officer Cann stepped behind Moore, Officer Moody stood to Cann's right, and Officer Grimes stood to Cann's left. Cann placed his left hand on Moore's right shoulder and his right hand on Moore's right arm, while the other officers attempted to replace the wrist restraints. According to Cann, before the restraints were put into place, Moore turned his head to the right and bit Cann on the left hand. (T. 25; 26). Officer Cann testified at trial that he not only felt Moore's teeth on his hand, he also observed Moore biting him. (T. 26).
Cann further testified that he struck Moore in the face to stop Moore from biting. Cann then used his left hand to cup Moore's chin and hold him down until Officers Moody and Grimes were able to secure the wrist restraints. Cann said he did not seek medical attention since he sustained only a small bruise approximately one inch below the knuckle of his middle finger. (T. 28-29). Moore admitted that he was loud and hysterical while in the emergency room, but denied biting Officer Cann.
In his sole assignment of error, Moore contends that the State presented insufficient evidence to convict him of the assault because he did not break the skin with his bite, and was merely resisting the restraint of a person who was not acting in a traditional police capacity or activity. In support of this assignment of error, Moore citesYoungstown v. Scott (April 6, 1996), Mahoning App. No. 93 CA 138, unreported. In that case, the Mahoning County Court of Appeals reversed Scott's conviction for disorderly conduct and two counts of assault. The court found that two hospital security guards had unlawfully arrested Scott, and his resistance to the detention was reasonable under all the circumstances of the case.
The State argues, however, that Youngstown v. Scott can be distinguished. Specifically, in the present case, the State says it presented evidence that Officer Cann was a peace officer, as defined by R.C. 2935.01, and that Cann and his fellow officers were acting in the performance of their official duties when they restrained Moore at the request of the emergency room personnel.
The State also points out that it produced evidence that Officer Cann is a designated "Special Policeman" for the City of Dayton and was commissioned at the Dayton Police Department in December of 1993. (T. 20). In order to qualify for that designation, and before being hired by Good Samaritan Hospital, Officer Cann completed the Ohio State Peace Officer training program at Sinclair Community College. (T. 19). When working as a security officer at the hospital, Officer Cann wears a dark blue uniform with a badge sewn onto the shirt designating his position as a police officer. (T. 21). Further, Officer Cann carries the same equipment that police officers traditionally carry: a firearm with extra ammunition, mace, handcuffs, an asp tactical baton, and a pocketknife. (T. 21-22). Because these facts demonstrate a strong connection between Officer Cann's status and that of other officers in the Dayton Police Department, and because Officer Cann is a designated Special Policeman, the State argues that Cann should be considered a member of an organized police department of a municipal corporation.
In State v. McDonald (Feb. 21, 1997), Mont. App. No. 15661, unreported, this Court upheld the trial court's finding that a security officer working at St. Elizabeth Hospital met the definition of "peace officer" where the officer was designated a "Special Policeman of the City of Dayton, Ohio." The facts in McDonald also demonstrated a "strong connection between [the victim officer's] status and the status of officers for the Dayton Police Department." Id. at p. 3. Furthermore, the State does not have to prove that the accused knew the victim of his assault was a "peace officer." State v. Freeman (Aug. 2, 2000), Medina App. No. 2999-M, unreported, p. 4.
In the present case, there is little doubt that Officer Cann was acting "in the performance of his official duties" when he acted to restrain the defendant.
R.C. 2903.13(A) provides that an assault occurs when one knowingly causes or attempts to cause physical harm to another. Evidence of bruising is sufficient evidence to support an assault conviction. Statev. Park (Dec. 9, 1999), Mahoning App. No. 98-CA-252, unreported. "Physical harm" means any injury regardless of its gravity. R.C.2901.01(A)(3). Accordingly, Officer Cann's testimony supports the trial court's finding of guilt in this matter.
In light of the preceding discussion, the appellant's assignment of error is overruled and the judgment of the trial court is affirmed.
GRADY, J., and YOUNG, J., concur.